**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CHRISTOPHER DEVINE                    *

     Petitioner                              *

          v                          *          Civil Action No. DKC-13-2369

UNITED STATES OF AMERICA[1]          *

     Respondent                            *
                                  ***

<u>**MEMORANDUM OPINION**</u>

Petitioner, Christopher Devine, filed a Petition for Writ of Habeas Corpus, requesting relief for a perceived violation of the Interstate Agreement on Detainers Act pursuant to 28 U.S.C. §2241.  ECF No. 1.  The United States responded and seeks dismissal of the petition or alternatively summary judgment in its favor.  ECF No. 8.  Petitioner has filed a reply in opposition.  ECF No. 12.  The court finds a hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2011).

**Allegations in Petition**

Petitioner claims that the states of Maryland and Pennsylvania, together with the United States government, improperly and unlawfully prosecuted him in violation of the Interstate Agreement on Detainers Act, Art. IV; the Uniform Criminal Extradition Act; the Jurisdictional Act (18 U.S.C. §3142); judicial process; and his constitutional rights under the Sixth and Fourteenth Amendments.  ECF No. 1 at p. 1.  In support, Petitioner claims that on June 28, 2010, he was in court in Philadelphia, Pennsylvania on state charges of fraud which were nolle prossed. At the end of those proceedings, a detective announced he had a warrant for Petitioner's arrest

---

[1]  The Clerk shall amend the docket to reflect that Respondent is the United States of America.

and he was taken into custody, but did not receive a *Miranda* warning.  Eventually, he was arrested in Wicomico County, Maryland on charges that eventually became a federal case.

Petitioner asserts that he was in the primary custody of the federal government when, on May 5, 2012, he was taken back to Philadelphia on a writ issued by the Philadelphia Sheriff's Department.  He states he was booked without *Miranda* warning and charged.[2]  Petitioner states that on August 13, 2012 he was again taken into court in Philadelphia where it was announced by the District Attorney that he was negotiating something with the United States' Attorney in Baltimore, Maryland.  On August 22, 2012, Petitioner was returned to the Chesapeake Detention Facility (CDF) in Baltimore, Maryland.

On March 1, 2013, Petitioner was sentenced in this court.  On April 12, 2013, Petitioner was again taken to Philadelphia where he asserts he learned the details of the special deal made between federal and Pennsylvania prosecutors.  He claims the U.S. Attorney "would take my white collar charge, label me the leader, and characterize me a reprehensible and feared individual using unreasonable force . . . to subject my co-defendants and portray them victims."  ECF No. 1 at p. 2.  Petitioner further claims that he would be similarly characterized by Philadelphia prosecutors and that although "it constitutes  . . . a double jeopardy claim" the deal was allowed by the judge.  *Id*.  Petitioner asserts he signed a "nolo plea," but claims that does not foreclose claims under 42 U.S.C. §1983, nor does it waive his right to raise jurisdictional challenges to his conviction.  *Id*.

Petitioner claims his numerous transfers between Pennsylvania and Maryland violated the law.  He claims he was entitled to be given a waiver of extradition and notice of his rights under the Interstate Agreement on Detainers (IAD).  ECF No. 1 at p. 5.  He asserts a detainer was lodged against him and he was illegally taken into custody without a pre-transfer hearing.

---

[2] Petitioner does not provide a description of the charges against him.

Petitioner concludes that once he was transferred to Philadelphia and back to Maryland several times, Philadelphia lost jurisdiction over the case. *Id*. He further claims the instant Petition is his exercise of his due process rights under the IAD and the Fourteenth Amendment. *Id*. at p. 6.

### Response to Show Cause

Respondent asserts that Petitioner is serving a 121 month federal sentence which was imposed in this court on March 5, 2013. *See United States v. Devine*, Crim. Case CCB-12-166 (D. Md.). Petitioner is currently confined at the Federal Correctional Institution (FCI) in Petersburg, Virginia. ECF No. 8 at pp. 1 -2. The history of Petitioner's prosecution and related transfers is related by Respondent as follows.

On December 22, 2011, Petitioner was arrested in Wicomico County, Maryland and charged with several counts of possessing lost or stolen credit cards and related offenses. ECF No. 8 at Ex. 3. Petitioner was initially charged in the District Court of Maryland for Wicomico County, Maryland, but a criminal information regarding the same offenses was filed in the Circuit Court for Wicomico County on January 4, 2012. *Id*. at Ex. 4.

On January 11, 2012, a criminal complaint was filed in this court against Petitioner charging him with possession of false identification documents in violation of 18 U.S.C. §1028(a)(3). ECF No. 8 at Ex. 5. An indictment was later filed on March 27, 2012. *Id*. at Ex. 6. Petitioner pled guilty to two of the counts in the indictment on November 8, 2012, and was sentenced to serve 97 months for Count 1 (conspiracy to commit bank fraud) and 24 months consecutive for Count 3 (aggravated identity theft). *Id*. at Ex. 7.

Petitioner had been charged in Pennsylvania in four separate criminal cases prior to any of the charges against him in Maryland. ECF No. 8 at Ex. 8 and 9. Two cases concerned conduct alleged to have occurred in January 2010 and charges against Petitioner were filed in

March of the same year.  *Id*.  Two additional cases concerned conduct allegedly occurring in January 2007 and January 2009; the charges against Petitioner in connection with those events were filed in June 2012.  *Id*. at Ex. 10 and 11.

After Petitioner was sentenced in this court on March 5, 2013, Pennsylvania sought his return for purposes of prosecuting the four outstanding charges against him.  The Court of Common Pleas for Philadelphia County, Pennsylvania issued a writ of habeas corpus ad prosequendum in March 2013 for Petitioner's appearance on April 12, 2013.  ECF No. 8 at Ex. 12, p. 2.  The United States Marshal Service in Baltimore honored the writ issued by the Pennsylvania court and transported Petitioner to Philadelphia on April 15, 2013.  He was then returned to federal custody and transported to Maryland to await determination of his federal Bureau of Prisons (BOP) institutional assignment.  Petitioner was scheduled for sentencing in the Pennsylvania cases in July 2013.  *Id*.

On May 2, 2013, Pennsylvania sought return of Petitioner to its custody on July 10, 2013, for a July 11, 2013 sentencing hearing.  ECF No. 8 at Ex. 13.  Petitioner was again transported pursuant to a writ of habeas corpus ad prosequendum issued by the Court of Common Pleas.  *Id*.  The transport request was again honored by the U.S. Marshals Service in Baltimore, but the sentencing proceeding was subsequently changed to September 11, 2013.  *Id*. at Ex. 8 through 11.  Petitioner was not, however, transported to Pennsylvania on the new sentencing date.  *Id*.

On September 20, 2013, Petitioner filed Motions to Withdraw his guilty pleas with the Pennsylvania court and hearings on the motions were scheduled for November 25, 2013.  Following the same procedure used for previous hearing dates, a writ was issued by the Pennsylvania court on September 24, 2013, to insure Petitioner's appearance at the motions hearing.  ECF No. 8 at Ex. 14.  At the time the writ was issued, Petitioner had been convicted in

this court and transferred to FCI Petersburg, Virginia.  Petitioner was transported by BOP officials for the November 25, 2013 hearing.  *Id*.  Respondent asserts that the above described transfers do not run afoul of the IAD and that the Petition should be dismissed.

## Analysis

The IAD is an agreement among 48 states, the District of Columbia, and the United States that "creates uniform procedures for lodging and executing a detainer."  *Alabama v. Bozeman*, 533 U.S. 148 (2001).  Article III requires a prisoner sent  from the state or jurisdiction where he or she is incarcerated to a state or jurisdiction where he or she faces new charges (the receiving state) to be brought to trial within 180 days.  IAD §2, Art. III(a).  The anti-shuttling provision which Petitioner claims was violated in the instant case is found in Article IV of the act and provides that:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment ... such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

IAD §2, Art. IV(e).  "Trial" as used in the anti-shuttling provisions does not include sentencing.  *See United States v. Coleman*, 905 F. 2d 330, 331-32 (10th Cir. 1990), *see also Jones v. United States*, 2013 WL 1104069, Civ. Action CCB-13-656 (D. Md 2013).  Dismissal of the charges for violation of the anti-shuttling provision is incumbent upon the receiving state where the open charges are to be tried.

The IAD provides for two different methods to request a temporary change in custody.  A prisoner may request the change for purposes of addressing an untried indictment, information, or complaint under Art. III, in which case extradition is waived; or a prosecutor may initiate the request under Art. IV of the act.  *See Cuyler v. Adams*, 449 U.S. 443, 444 (1981).

> Article IV of the Agreement provides the procedure by which the prosecutor in the receiving State may initiate the transfer. First, the prosecutor must file with the authorities in the sending State written notice of the custody request, approved by a court having jurisdiction to hear the underlying charges. For the next 30 days, the prisoner and prosecutor must wait while the Governor of the sending State, on his own motion or that of the prisoner, decides whether to disapprove the request. If the Governor does not disapprove, the prisoner is transferred to the temporary custody of the receiving State where he must be brought to trial on the charges underlying the detainer within 120 days of his arrival. Again, if the prisoner is not brought to trial within the time period, the charges will be dismissed with prejudice, absent good cause shown.

*Id.* In the instant case there is no evidence that Petitioner asked the U.S. Attorney General to disapprove Pennsylvania's request pursuant to Art. IV(a), nor has he offered any evidence that he had a viable objection to raise.[3]

Petitioner does not dispute that he pled guilty to the Pennsylvania charges the first time he was transported there on the writ issued by the Pennsylvania court. ECF No. 12. When he was later returned to Pennsylvania for purposes of sentencing, there were no longer any pending charges against him. In his Reply, Petitioner baldly re-asserts his position that his numerous transfers were improper, but appears to admit that he was not returned to federal custody before disposition of the charges in Pennsylvania. *Id.* at pp 3 – 4. His transport to and from Pennsylvania did not run afoul of the anti-shuttling provisions of the IAD because his guilty plea served as a "trial on [the] indictment, information, or complaint." Additionally, even if the anti-shuttling provision had been violated, the proper forum for seeking dismissal of the charges is the Pennsylvania court. Thus, on the undisputed facts before this court, Petitioner is not entitled to any relief.[4]

---

[3] *See e.g. Adams, Id.* at 437, n. 4 (objection to receiving state's request based on the allegation it waited for only alibi witness to die before trying prisoner).

[4] Petitioner's claim regarding the Uniform Criminal Extradition Act is essentially a restatement of his claim under the IAD. *See e.g.*, *Stewart v. Bailey*, 7 F. 3d 384, 393 (4th Cir. 1993) (holding Virginia's extradition act applies to fugitives from justice and entitles the prisoner to avail himself of the IAD). He appears to have abandoned his claims that his Sixth and Fourteenth Amendment rights were violated as he does not address these claims in his

By separate Order the Petition for Writ of Habeas Corpus shall be dismissed.  Upon dismissal of a Petition for Writ of Habeas Corpus, this court must determine if a Certificate of Appealability should issue.  A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U. S.C. § 2253(c)(2).  To meet this burden an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U. S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U. S. 880, 893 (1983)).  Petitioner in the instant case has failed to meet this standard, therefore, a Certificate of Appealability shall not issue.


   October 3, 2014                              _____/s/_____
Date                                           DEBORAH K. CHASANOW
                                               United States District Judge

---

Reply.  ECF No. 12.  Even if Petitioner did not intend to abandon the constitutional claims, however, this court finds no evidence that Respondent breached a constitutional duty owed to Petitioner.